```
                   UNITED STATES DISTRICT COURT

                  FOR THE EASTERN DISTRICT OF CALIFORNIA


DIMAS O'CAMPO,
                                        NO. CIV. S-10-1105 LKK/CMK
          Plaintiff,

     v.
                                              O R D E R
CHICO MALL, LP, et al.,

          Defendants.
                                    /
```

Plaintiff brings claims against numerous defendants, including a shopping mall and several stores and restaurants within that mall. Plaintiff, who suffers from severe brain damages and requires the use of a cane, alleges that defendants denied him access by virtue of physical and intangible barriers. Defendant Hot Topic, Inc. ("Hot Topic"), one of the stores within the shopping mall has moved for a stay of proceedings and early evaluation conference under California's Construction-Related Accessibility Standards Compliance Act and to dismiss for lack of jurisdiction and for failure to state a claim. For the reasons described below, Hot Topic's motions are denied.

////

# I. BACKGROUND

## A. The Complaint[1]

Plaintiff Dimas O'Campo ("plaintiff" or "O'Campo") suffers from severe brain damage. Compl. ¶ 16. He needs to use a cane to travel in public because his injury affects his ability to walk, talk, see, and stand. Id. Plaintiff brings claims against numerous alleged public accommodations. See Compl. They include a shopping mall and several stores and food establishments within the mall. Id. Moving defendant Hot Topic, Inc. ("defendant" or "Hot Topic") is a store within the mall.

With respect to Hot Topic, plaintiff alleges, inter alia, that he visited the store and encountered physical and intangible barriers that interfered with or denied his ability to use and enjoy the goods, services, privileges, and accommodations offered at Hot Topic. Id. at 26. Plaintiff specifically identified three barriers at Hot Topic: (1) the dressing room bench is not 24 inches wide by 48 inches long; (2) the check out counter is too high with no portion lowered to accommodate a patron in a wheelchair;[2] and (3) many of the aisles/routes through the store are less than 36 inches wide because of crowded merchandise. Id. at 37. Further, plaintiff alleges that he was deterred from visiting Hot Topic because "he

---

[1] These assertions are drawn from the complaint and are accepted as true solely by virtue of the motions.

[2] The court notes that there are no facts that suggest that plaintiff uses a wheelchair. Rather, plaintiff has alleged that he uses a cane.

2

knew that . . . Hot Topic['s] . . . goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as himself). Id. at 38. Plaintiff represents that he "continues to be deterred from visiting . . . Hot Topic . . . because of the future threats of injury created by these barriers." Id.

### B. Facts Related to Motion to Stay and For Early Evaluation Conference

Hot Topic's counsel filed a declaration. The relevant portion states:

> On information and belief after all appropriate inquiry, the Hot Topic Store . . . at the Chico Mall was inspected by a duly licensed Certified Access Specialist ("CASp Inspector") on or about 26 May 2010. I personally spoke with the CASp inspector [sic] on the day of the inspection and received pictures he took and a report he prepared at my direction shortly thereafter; it is my understanding that the Hot Topic Store is pending a determination by the CASp that the site meets applicable Construction Related Accessibility Standards. Although I did not personally accompany the CASp Inspector, the information he provided is consistent with information I obtained through other sources so that there is no doubt in my mind that he inspected the subject property . . . on or about 26 May 2010.

Decl. of David W. Peters, ¶ 2.

Plaintiff filed his complaint on May 5, 2010. The complaint was served upon Hot Topic on June 2, 2010.

## II. STANDARDS[3]

---

[3] The court does not include a standard section for the application for a stay and conference. The standard applied as to that application is discussed in the analysis section below.

3

**A. Fed. R. Civ. P. 12(b)(1) Motion to Dismiss**

It is well established that the party seeking to invoke the jurisdiction of the federal court has the burden of establishing that jurisdiction exists. KVOS, Inc. v. Associated Press, 299 U.S. 269, 278 (1936); Assoc. of Medical Colleges v. United States, 217 F.3d 770, 778-779 (9th Cir. 2000). On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the standards that must be applied vary according to the nature of the jurisdictional challenge.

Here, the challenge to jurisdiction is a facial attack. That is, the federal defendant contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In a Rule 12(b)(1) motion of this type, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made. See Sea Vessel Inc. v. Reyes, 23 F.3d 345, 347 (11th Cir. 1994), Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990); see also 2-12 Moore's Federal Practice - Civil § 12.30 (2009). The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003), Miranda v. Reno, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001).

////

**B.   Fed. R. Civ. P. 12(b)(6) Motion to Dismiss**

A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules. In general, these requirements are established by Fed. R. Civ. P. 8, although claims that "sound[] in" fraud or mistake must meet the requirements provided by Fed. R. Civ. P. 9(b). Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1103-04 (9th Cir. 2003).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation and modification omitted).

To meet this requirement, the complaint must be supported by factual allegations. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. Id. at 1949-50. Iqbal and Twombly therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Id.; Erickson v. Pardus, 551 U.S. 89

5

(2007).[4]

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

The line between non-conclusory and conclusory allegations is not always clear. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). While Twombly was not the first case that directed the district courts to disregard

---

[4] As discussed below, the court may consider certain limited evidence on a motion to dismiss. As an exception to the general rule that non-conclusory factual allegations must be accepted as true on a motion to dismiss, the court need not accept allegations as true when they are contradicted by this evidence. See Mullis v. United States Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987), Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

6

"conclusory" allegations, the court turns to Iqbal and Twombly for indications of the Supreme Court's current understanding of the term. In Twombly, the Court found the naked allegation that "defendants 'ha[d] entered into a contract, combination or conspiracy to prevent competitive entry . . . and ha[d] agreed not to compete with one another,'" absent any supporting allegation of underlying details, to be a conclusory statement of the elements of an anti-trust claim. Id. at 1950 (quoting Twombly, 550 U.S. at 551). In contrast, the Twombly plaintiffs' allegations of "parallel conduct" were not conclusory, because plaintiffs had alleged specific acts argued to constitute parallel conduct. Twombly, 550 U.S. at 550-51, 556.

Twombly also illustrated the second, "plausibility" step of the analysis by providing an example of a complaint that failed and a complaint that satisfied this step. The complaint at issue in Twombly failed. While the Twombly plaintiffs' allegations regarding parallel conduct were non-conclusory, they failed to support a plausible claim. Id. at 566. Because parallel conduct was said to be ordinarily expected to arise without a prohibited agreement, an allegation of parallel conduct was insufficient to support the inference that a prohibited agreement existed. Id. Absent such an agreement, plaintiffs were not entitled to relief. Id.[5]

---

[5] This judge must confess that it does not appear self-evident that parallel conduct is to be expected in all circumstances and thus would seem to require evidence. Of course, the Supreme Court has spoken and thus this court's own uncertainty needs only be

7

1  In contrast, Twombly held that the model pleading for
2 negligence demonstrated the type of pleading that satisfies Rule
3 8. Id. at 565 n.10. This form provides "On June 1, 1936, in a
4 public highway called Boylston Street in Boston, Massachusetts,
5 defendant negligently drove a motor vehicle against plaintiff
6 who was then crossing said highway." Form 9, Complaint for
7 Negligence, Forms App., Fed. Rules Civ. Proc., 28 U.S.C. App., p
8 829. These allegations adequately "'state[] . . . circumstances,
9 occurrences, and events in support of the claim presented.'"
10 Twombly, 550 U.S. at 556 n.3 (quoting 5 C. Wright & A. Miller,
11 Federal Practice and Procedure § 1216, at 94, 95 (3d ed. 2004)).
12 The factual allegations that defendant drove at a certain time
13 and hit plaintiff render plausible the conclusion that defendant
14 drove negligently.

### III. ANALYSIS

**A.  Hot Topic's Motion to Dismiss**

    **1.  Standing**

        **a.  Hot Topic's Argument**

19  Hot Topic argues that plaintiff lacks standing to bring his
20 claim under the Americans with Disabilities Act ("ADA"),
21 plaintiff's only federal claim. Because he lacks standing to
22 bring his only federal claim, it argues, the court should
23 dismiss the case for lack of subject matter jurisdiction.
24  Defendant cites to Singletary v. Brick Oven, 406 F. Supp.

---

26 noted, but cannot form the basis of a ruling.

8

2d 1120 (S.D. Cal. 2002) in support of its argument that plaintiff here lacks standing to sue under the ADA. There, the district court held that, "In the context of the ADA's standing requirement for injunctive relief, a plaintiff must allege that a public accommodation has discriminated against him and that there is a "'real or immediate threat that the [public accommodation] will again subject [him] to discrimination.'" Id. at 1126 (quoting Bird v. Lewis & Clark College, 303 F.3d 1015, 1019 (9th Cir. 2002))[6]. The Singletary court continued that a plaintiff can meet this standard by "showing that he has encountered (or has knowledge of) barriers at a place of public accommodation and he intends to return to the public accommodation in the future." Id. (citing Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1137-1138 (9th Cir. 2002)). The Ninth Circuit has subsequently affirmed this reasoning. See Chapman v. Pier 1 Imports (U.S.) Inc., 571 F.3d 853 (9th Cir. 2009); Doran v. 7-Eleven, Inc., 524 F.3d 1034 (9th Cir. 2008). Thus, in order to demonstrate standing, plaintiff merely needs to allege that he has encountered or has knowledge of barriers at a place of public accommodation and that he intends to return to the public accommodation in the future.

With respect to Hot Topic, plaintiff has alleged that he

---

[6] In Bird, the Circuit held that a plaintiff lacked standing for injunctive relief against the college from which she had graduated because she "cannot demonstrate a real or immediate threat that the [c]ollege will again subject her to discrimination."

9

encountered barriers at Hot Topic and that he was deterred from visiting Hot Topic because of these barriers. Compl. ¶¶ 37-38. Plaintiff has made similar allegations against the other defendants. See id. ¶¶ 26-45. Accordingly, plaintiff has demonstrated that he has standing to sue under the ADA. Thus, Hot Topic's motion to dismiss for lack of subject matter jurisdiction is denied.

### b. The Court's Concerns

Plaintiff alleges that he has severe brain damages that affects his ability to walk, talk, see, and stand and that he requires the use of a cane. Compl. ¶ 16. Plaintiff does not allege that he uses a wheelchair. However, many of the barriers plaintiff alleges appear to solely concern accessibility for individuals using wheelchairs. These barriers include:

(1) As to the Chico Mall Common Area Facility:

    (a) "There is insufficient strike side clearance when entering the men's restroom." Id. at ¶ 27.

    (b) "There is no handle mounted below the water closet stall door lock. Id.

    (c) "The clothing hook on the interior of the water closet stall door is mounted too high." Id.

    (d) "The flush valve is not mounted on the wide side of the water closet." Id.

    (e) "The toilet tissue dispenser is mounted too high." Id.

    (f) "The toilet tissue dispenser protrudes into the

```
 1                    clear floor and/or maneuvering space required to
 2                    access the water closet." Id.
 3               (g)  "There is insufficient strike side clearance when
 4                    exiting the men's restroom." Id.
 5          (2)  As to the PacSun Facility
 6               (a)  "The check out counters are too high with no
 7                    portion lowered to accommodate a patron in a
 8                    wheelchair." Id. at ¶ 29.
 9          (3)  As to the Buckle Facility
10               (a)  "The check out counters are too high with no
11                    portion lowered to accommodate a patron in a
12                    wheelchair." Id. at ¶ 31.
13               (b)  "The pay point machine is too high." Id.
14          (4)  As to the Orange Julius Facility
15               (a)  "The check out counters are too high with no
16                    portion lowered to accommodate a patron in a
17                    wheelchair." Id. at ¶ 33.
18               (b)  "The pay point machine is too high." Id.
19          (5)  As to the Gap Facility
20               (a)  "The check out counters are too high with no
21                    portion lowered to accommodate a person in a
22                    wheelchair." Id. at ¶ 35.
23          (6)  As to the Hot Topic Facility
24               (a)  "The check out counters are too high with no
25                    portion lowered to accommodate a patron in a
26                    wheelchair." Id. at ¶ 37.
```

11

        (b)  "Many of the aisles/routes through the store are less than 36 inches wide due to the crowded merchandise." <u>Id.</u>

(7) As to the Cookie Facility

        (a)  "The check out counters are too high with no portion lowered to accommodate a patron in a wheelchair." <u>Id.</u> at ¶ 39.

        (b)  "The pay point machine is too high." <u>Id.</u>

(8) As to the JCPenny Facility

        (a)  "The clothing hook on the interior of the dressing room door is mounted too high." <u>Id.</u> at 41.

        (b)  "The clothing hook on the interior of the water closet stall door is mounted too high." <u>Id.</u>

        (c)  "The toilet tissue dispenser protrudes into the clear floor and/or maneuvering space required to access the water closet." <u>Id.</u>

        (d)  "The toilet tissue dispenser is mounted too high." <u>Id.</u>

        (e)  "The soap dispensers are mounted to high. <u>Id.</u>

        (f)  "The soap dispensers are outside of the required reach range limits." <u>Id.</u>

The court has an independent duty to confirm subject matter jurisdiction. Here, it appears that plaintiff may lack standing to challenge many of the barriers alleged in his complaint. For this reason, the court orders plaintiff to show cause as to

12

whether he has standing to challenge these barriers within fourteen (14) days of the issuance of this order. Plaintiff is instructed to demonstrate whether he has suffered, as alleged, an injury in fact.

### 2. Failure to State a Claim

Defendant also moves for dismissal of plaintiff's claims against it on the grounds that he has failed to state a claim because he did not plead the date on which he visited Hot Topic. Specifically, Hot Topic contends that plaintiff must allege that he visited the it within the statute of limitations. As this court has previously held, and as courts have recently held in accessibility cases, plaintiff is not required to plead facts in anticipation of an affirmative defense. Saylor v. Zeenat, Inc., No. Civ.S02-863WBS/DAD, 2002 WL 33928621, at *2 (E.D. Cal. Aug. 13, 2002) (citing Ortiz v. Bank of America, No. S-81-298, 1982 WL 502, at *4 (E.D. Cal. Sept. 9, 1982)). Applying this reasoning, the court in Salyor, under facts similar to the case at bar, specifically held that, "Saylor is not required to allege the date that her cause of action accrued for statute of limitations purposes." Id. Thus, plaintiff need not plead the date of his visit, and defendant's motion to dismiss for failure to state a claim is denied.

### B. Hot Topic's Motion to Stay and Hold Early Evaluation Conference.

#### 1. Construction-Related Accessibility Standards Compliance Act

13

California has recently enacted the Construction-Related Accessibility Standards Compliance Act ("Act"). Cal. Civ. Code §§ 55.51-55.54. This statute entitles some defendants in construction-related accessibility suits to a stay and anearly evaluation conference for the lawsuit. Id. at § 55.54(b)(1). Specifically, "upon being served with a summons and complaint asserting a construction-related accessibility claim . . . a qualified defendant may file a request for a court stay and an early evaluation conference in the proceedings of that claim prior to or simultaneous with the qualified defendant's responsive pleading or other initial appearance in the action that includes the claim." Id.

The statute defines a "qualified defendant" as a "place of public accommodation[, as defined in the ADA] that met the requirements of 'CASp [(certified access specialist)] - inspected' or 'CASp determination pending' prior to the date the defendant was served with the summons and complaint . . . ." Id. at § 55.52(8). A CASp is defined as any person who has been certified pursuant to Cal. Gov. Code § 4459.5, a program implemented by the State Architect. Id. at § 55.52(3). "'CASp-inspected' means the site was inspected by a CASp and determined to meet all applicable construction-related accessibility standards" under the Act. Id. at § 55.52(4). A "CASp determination pending" defendant is one in which the public accommodation was inspected, but for which the CASp has not yet issued a determination of compliance with the Act.

The Act defines a "construction-related accessibility claim" as "any civil claim in a civil action with respect to a place of public accommodation . . . based wholly or in part on an alleged violation of any construction-related accessibility standard." Id. at 55.52(1). A construction-related accessibility standard, in turn, "means a provision, standard, or regulation under state or federal law requiring compliance with standards for making new construction and existing facilities accessible to persons with disabilities" including the statutes under which plaintiff here brings his claims: the ADA, the California Disabled Persons Act, and the California Unruh Act.

Section 55.53 of the Act sets forth the obligations of the CASp. In particular, it provides that, "if the CASp determines the site meets all applicable construction-related accessibility standards, the CASp shall provide a written inspection report to the requested party" that describes the property and includes a statement of compliance. Id. at § 55.53(a)(1). Further, "[I]f the CASp determines that corrections are needed to the site in order for the site to meet all applicable construction-related accessibility standards [(i.e. a CASp determination pending site)], the CASp shall provide a signed and dated written inspection report to the requesting party" that describes the corrections needed to meet the standards and a reasonable schedule for completion of the corrections. Id. at § 55.53(a)(2).

Under Section 55.54(b) of the Act, a qualified defendant

has thirty days to file an application for a stay and early evaluation conference. This application must include a signed declaration that declares that the site "has been CASp-inspected or is CASp determination pending and, if the site is CASp-inspected, [that] there have been no modifications completed or commenced since the date of inspection that may impact compliance with construction-related accessibility standards to the best of the defendant's knowledge" and that an inspection report has been issued by a CASp."[7] Id. at § 55.54(c)(1). Under the Act, immediately after receipt of the application for stay and early evaluation, the court must grant a ninety day stay of the proceedings with respect to the construction-related accessibility claim and schedule a mandatory early evaluation conference. Id. at § 55.54(d). "Early evaluation conferences shall be conducted by a superior court judge or commissioner, or a court early evaluation conference officer." Id. at § 55.54(f).

### 2. Application to Plaintiff's Federal Claim

The Act is preempted to the extent that it imposes any additional procedural hurdles to a plaintiff bringing a claim under the ADA. The Ninth Circuit has held that, "[F]or federal law to preempt state law, it is not necessary that a federal statute expressly state that it preempts state law. Federal law preempts state law if the state law "actually conflicts" with federal law." Hubbard v. SoBreck, LLC, 554 F.3d 742 (9th Cir.

---

[7] The court does not decide whether defendant's counsel's declaration is sufficient under the Act.

16

2009) (citing <u>Cal. Fed. Sav. & Loan Ass'n v. Guerra</u>, 479 U.S. 272, 280-81 (1987)). Here, the ADA has no provision for mandatory stays and early settlement conferences where a public accommodation has been inspected by a state official and found to be in compliance with federal as well as state law. Any state law requirement that a claim brought under the ADA be subjected to such a procedure, then, clearly conflicts with federal law. Thus, the Act is preempted to the extent it applies to plaintiff's ADA claim.

Defendant requests that this court decline supplemental jurisdiction if it finds that application of the Act to the ADA is preempted. In this case, the federal and state claims turn on virtually identical facts and similar theories of liability. It appears to the court to be an inappropriate use of judicial resources to have the federal courts and the state courts simultaneously resolve cases with virtually identical facts. Consequently, the court shall exercise supplemental jurisdiction over the state law claims.

### 3. Stay and Early Evaluation Conference

The remaining question is whether this court should apply the Act to plaintiff's state law claims.[8] When federal courts consider claims under state law, they are to apply federal

---

[8] Defendant's request for a ninety-day stay appears pointless in this case. The parties shall be engaged in discovery over the next ninety days with respect to plaintiff's ADA claim. As far as this court can tell, the parties will seek discovery on the same grounds for plaintiff's federal and state law claims. Thus, a stay appears inappropriate.

17

procedural law and state substantive law. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). Here, there is no federal rule of procedure that addresses mandatory evaluation conferences in the circumstances and stays covered by the Act. See Hanna v. Plumer, 380 U.S. 460 (1965). As such, the court must determine whether application of the state law is likely to be determinative of the outcome of the lawsuit. See Guaranty Trust Co. v. York, 326 U.S. 99 (1945). While of course a settlement conference could potentially dispose of a case if a settlement is reached, it does not seem to be outcome determinative as that term is understood under the Erie doctrine. Likewise, a mandatory stay of proceedings does not appear to be outcome determinative. Applying the rule does not effect any parties' legal rights or entitlement to relief. Accordingly, this federal court cannot order a plaintiff to engage in an early evaluation conference. Thus, defendant's motion for a stay and an early evaluation conference under the Act is denied.

## IV. CONCLUSION

For the foregoing reasons, the court ORDERS that defendant Hot Topic's application for a stay and an early evaluation conference, ECF No. 15, and motion to dismiss, ECF No. 19, are DENIED.

The court FURTHER ORDERS plaintiff to SHOW CAUSE as to whether he has standing to challenge the legality of the

////

////

1 barriers identified in his complaint.
2     IT IS SO ORDERED.
3     DATED: August 12, 2010.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT